Your Honors, good morning. Dennis Prince on behalf of Progressive Gulf Insurance Company. This case represents nothing more than routine dissimilarity of state laws. Counsel, let me ask you something specific that bothers me here. I don't see right offhand why Sotirakis doesn't control the, there's another case here, I think it was Daniels, that strikes me as distinguishable. And let me tell you my concern. I can't see what interest Nevada would have or how it could legitimately, effectively regulate the sale of insurance in Mississippi by a company that sells in Mississippi to people that live in Mississippi. It seems to me that if Nevada imposes its public policy on family exclusions in a circumstance where an insurance company sells to Mississippians, then it's encroaching improperly on the public policy decisions of the co-equal Mississippi legislature or Mississippi Insurance Commissioner. So why shouldn't we just follow Sotirakis? I believe you should follow Sotirakis. In fact, that's Progressive's position in the case. Oh, I'm sorry. I was thinking you were the other side. Well, you're sort of asking the question. I had that sense. I wonder if he thinks that I might be the insured. You're right. I mixed up the sides. No problem. But I do believe that. Now your opposing counsel, though, knows my questions. So maybe you can stand up. Except that situation did not involve a Nevada resident being injured, correct? Which case? Sotirakis. No. I thought it was a California resident, right? It was a California resident. Okay. And here we have two Nevada residents who were injured. No. You have two children who have two residences because they're minor children. One, they were moving to Nevada to be with their mother, but also they were. They obviously already arrived because that's where they were injured. They were there one day after their summer break, but they remained also as part of the custodial grant of the divorce court with their father. They had been living with their father up until the day before the accident as Mississippi residents. And for the purposes of this discussion and under Mississippi law, these kids are considered residents of both parents' households. What does Nevada law say? Are they residents of both? Yes. Okay. So they're Nevada residents also, right? They are. Okay. And they're not different than Sotirakis or however that's pronounced. Not necessarily. Well, in that case, they weren't Nevada residents at all. Is that right? That's true. Okay. And here, they are Nevada residents at least in part or sometimes or whatever. Correct. Okay. So that's at least a difference. I know you don't want it to make a difference, but it is a difference. And as I read both Daniels and Williams, the Nevada courts are concerned very greatly with their own residents, even ones that are new or maybe even ones that share residency somewhere else. And it strikes me that if we follow the logic of Williams in particular, we would end up where the district court, sitting in Nevada, ended up here. So would you address Williams and the residency question and tell me why you still can prevail? We can, Your Honor. If, for example, if Ms. Feinrich took the position that the kids really lived with their father and they were not residents of my household, it would beg the question of whether the family exclusion is even applicable. Right? But they've said that the children were moving into her home. They just arrived here. They have two residents, one in Nevada and one in Mississippi. Under Williams, the key wasn't necessarily that they were California residents, but the fact is that the policy was issued in California. The insurer underwrote a risk in California based upon the location of the risk. They accepted a premium based upon the vehicle and the risk being located in California and two are California residents. The critical fact here is that's the same thing that Progressive did. Progressive had no knowledge that any of their insurers had left the state of Mississippi and permanently moved to Nevada. That's critical. What do you make of the Court's statement, though, that Nevada's public policy overrides or outweighs the interests of another state when the application of the other state's law would completely preclude an insurer's recovery? I'm looking at page 267 of Williams. That statement does make the Williams holding somewhat confusing. It wasn't a central statement to their conclusion because if you look at Harmonize Williams with Sotorakis, there's no indication that the Nevada Supreme Court was even looking at whether that upholding the family member exclusion in Sotarakis barred all recovery. That was never an essential element to that decision. I think the Court was making a point to you did receive a recovery in this case. There's no case in Nevada that's invalidated a family exclusion where the policy was issued to at the time they were resident of another state. There's no case. Well, let me ask you this question. Our job in this case, as I understand it, is to figure out what we think the Nevada Supreme Court would hold in this circumstance. Do you agree with me so far? I agree. If it is not obvious to us how to harmonize these different cases or we conclude that maybe they can't easily be harmonized at all, should we certify a question to the Nevada Supreme Court and ask them directly to decide this question of Nevada public policy? If you feel that you can't sufficiently harmonize the cases, we would agree with that position, that you could certify a question to the Nevada Supreme Court. I think if you take Sotarakis on the one hand, because they're very similar facts, and you look at Williams on the other hand, which they're both California residents, both in California, they both had the family member exclusions in the same USAA policies, that in Sotarakis, they never impose as a condition that if this bars any recovery, we'll no longer have enforceability. Because think about it. Let's assume that Ms. Feinrich drove the kids to Disneyland. And so now we're in California, even though the kids had temporarily moved to Nevada, but now we have the Mississippi policy that they drive to Disneyland. Now, let's say in Baker, California, just south of Las Vegas, 100 miles south of Las Vegas, she's involved in a single vehicle rollover accident and injures the children. The outcome is different, right? Because in California, you uphold the family member exclusion. But in Nevada, you don't. If you drive to Idaho, they'll enforce it. If you drive to Oregon, they don't enforce it. If you go back to Mississippi, they enforce it. And what's bringing back to my point was, if you look at the rules. But isn't that inherent in this, because some states uphold it and some states don't? Exactly. And this is why this is a harmonization of the case. Well, that's why maybe we ought to ask the Nevada court what it thinks. Well, you should get a ride or pay a premium. That's correct. And this is, if you look at the Williams case, which is the last pronouncement on this issue, they talk about routine dissimilarity is not enough by itself to overcome the choice of law provision. Because, and my point is, the case we cited in our brief, we have dissimilarity in most states, particularly even in adjoining states. For example, we cited a case from Wisconsin. And there's a difference between Wisconsin law and Minnesota law. There's a difference between Oregon and the State of Washington. There's a difference between Nevada and California. But think about the expectations of the parties. And that's what one of the key factors that the Court looked at in both the Williams case as well as the Seavers case is, because one of the critical functions of choice of law principles is to harmonize the laws between the various states. And the overriding factor was what's the intent of the parties? What did the parties contract for? And in this case, Ms. Feinrich got exactly what she contracted for. She was under an obligation to promptly report any change of address to Progressive. She had been in Nevada since February of the same year as the accident, February of 2003. If she had been and had the accident at home in Mississippi, her home state, she would not be entitled to coverage. She moves to Nevada, does not inform Progressive of her change of address. So Progressive has no idea that the risk that they were underwriting now in Mississippi is now in California, excuse me, partially in Nevada, and then the children moved to Nevada without informing Progressive. Progressive certainly had no expectation that their policy provisions that they contracted for, accepted a premium for, and rated them for were not going to be followed. And I don't think there's nothing in this record that Ms. Feinrich, when she moved to Nevada, doesn't report her change of address to Progressive, that she had a different expectation. Her expectation was my insurance from Mississippi is going to follow me here. You can't, on one hand, breach the policy by not informing Progressive that you've moved and give them an opportunity to rewrite you in accordance with the laws of the state of Nevada. She could have avoided all this by simply reporting the matter to Progressive and obtaining a new policy. She made the conscious election not to do that. Her vehicle was still registered in the state of Mississippi at the time of the accident. She still had a Mississippi driver's license at the time of the accident. What indicia of residency did she truly have? But let's accept it for the moment. She was under an obligation to promptly report her change. She could have avoided all of this by having a different policy. Because the vehicle she was actually driving was not even on the Progressive policy any longer. About one month before the accident, the ex-husband, Randall, he takes that vehicle off the policy, but she stays on the policy. She never procures any separate insurance. So the only insurance she had when she moved to Nevada was that which she bought in 1999 through Progressive and paid the premium for. So her expectation level is critical, and that's exactly what the Court of Williams is talking about. What is the expectation of these parties? Certainly Progressive had the expectation, in a highly mobile society where you can freely move around in your automobile, that in the event there's a coverage dispute, that the policy that we underwrote to you and you paid for and you bargained for in the state of Mississippi, we have the right to rely upon those terms. Similarly, Ms. Feinrich would have the same right to rely upon those terms. And this is what's, if you think about the fallacy. So what would happen, let's assume you rule in favor that you apply Nevada law. Then that means every time, let's say a Nevada resident goes to California, and most Nevada policies still have a family member exclusion, it's unenforceable in Nevada, but when there's an accident in California, now Progressives should be able to make the same argument that an insured would make, like in the context of this case. Oh, since the accident happened in California, we're not going to provide you coverage. Because in California, they enforce a family member exclusion. Is the premium higher in Nevada than it is in Mississippi? Yes. And in fact, Progressive Gulf Insurance Company doesn't write in Nevada. They only write in the Gulf states. That's an entity that does not underwrite specifically in Nevada. Progressive has other entities that they utilize in Nevada, but that's not one of them. But think about the difficulty with how do you underwrite risk, how do you accept premium, and how do you calculate a risk? Here, Progressive believed that they had a Mississippi residence, the vehicle was in Mississippi, it was primarily driven in Mississippi, and all of a sudden you move them, one of the insureds, 1,500 miles away and relocate to southern Nevada with a different risk premium. She's no longer married, no longer is going to have a multi-car discount like they previously had. That completely changes the risk analysis and their underwriting. And there's differing laws in the states that they would have to follow if she had called, reported her address, and obtained a new policy. Well, if you have a Mississippi driver and he's headed and he's going to take the car out to the Pacific Coast, can you advise Progressive and get trip coverage? I don't know the answer to that question. I don't know if you can get trip coverage. I don't know that. Could I ask you one thing about the stipulation here? You've made a lot of arguments here about how she didn't give notice of her change of address and all of that, but I understand the stipulation to be that if Mississippi law applies, there's no coverage, but that if Nevada law applies, there are particular coverage limits and that you would owe a duty to defend and indemnify consistent with the terms and conditions. In other words, we're not here, and then in paragraph 11, you waive any other coverage defenses that exist now or may previously have existed. So it seems to me that your arguments here about lack of notice and the amount of the premium wasn't right and all of that really are no longer relevant in light of your stipulation. Are we here only to look at how Nevada law treats the family exclusion or not? That's how I understood the stipulation. Yes, but I think that goes to the expectation of the parties. While we're not asserting any other coverage defenses, it's a singular issue. It's a factor for the court to consider in determining what steps she also could have taken to avoid this from happening. How does she comply with the policy terms and provisions? And it mostly goes to progressives' expectation of coverage. What did progressive know at the time of the loss? Were they aware that she had relocated to the state of Nevada and did they have a different level of expectation? My point is by not informing progressive of her move, she had the same level of expectation of coverage in Nevada as she did in the state of Mississippi. Okay. Did you want to save half a minute for rebuttal? Sure. That's what you have now. That's fine. I'll do that. Thank you. Good morning, Your Honors. Brett Carter for the respondents. To address Your Honor's question about whether sutteracas applies, I think it does to a certain extent. If you look at the most recent case or the last cases, counsel stated that interpreted this issue, which is Williams. Williams starts off by talking about sutteracas and talks about in trying to determine whether or not the state has a substantial relationship to the insureds, if you will. And obviously in sutteracas there wasn't much of a relationship. The fortuity of the accident just happened to happen. Williams really goes the same way. You have California buying a policy in California and that Williams focuses on the substantial relationship to California and insubstantial relationship to Nevada. But my question was a little bit different cast on it. What you have going for you as an argument is that Nevada has a public policy that they do not accept the family exclusion. They don't think the family exclusion is fair and they reject it as a matter of public policy. Some states do that, like Alaska is the same way. Other states think the family exclusion is a good thing because of the risk of collusion in intra-family lawsuits. And they just flat out differ. Now insurance is a contract. It's not a tort doctrine. It's a contract. The contract is made in Mississippi by Mississippians and it specifically provides it subject to the law of Mississippi. I don't see how we can say that there's even a possibility that Nevada public policy controls without interfering with the public policy of Mississippi. The public policy of Mississippi makes it possible to sell cheaper insurance because it doesn't cover as much. There's a family exclusion. And also they have a public policy where they rate the risk of collusion higher and the risk of non-coverage of family members in accidents lower than Nevada does. These are just policy choices. Sure. And to respond, I don't think there's a public policy against family member exclusions. What the public policy is against, trying to avoid insurance over or to the extent of the state minimum liability requirements of 1530. The other examples would be permissive users that are specifically excluded under the policy, underinsured that are specifically excluded. There were a number of cases defendants cited and I decided, sorry, appellant cited that state specifically that there are valid exclusions, but they're only going to be valid up to the extent that they don't avoid strong public policy of Nevada. Well, I can see where each state is entitled to impose its public policy on contracts made in the state or contracts made with people that live in the state. And there's a difference. But I can't see where a state is entitled to impose its public policy on what sort of contracts can be made on people who make contracts in other states. Well, that's why SOTA Rock has talked about the five factors that you consider, and it's actually cited too in Williams. It's not just the place of the contract or the performance of the contract. It actually specifically is the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and then the domicile or residence of the parties. Well, that those general provisions are certainly helpful where, for example, a Nevadan makes a contract with a company in Massachusetts or a Californian makes a contract with a party in Texas for performance in Nevada. Then you get into all those things. But here it's simpler. Well, but the difference between the cases that are before you is that there hasn't been a situation in which it's actually affected a Nevada resident who's contracted out of state. Which brings me to my question, and I ask the same question of opposing counsel. If this is different from all the other Nevada Supreme Court cases that have come before because it involves Nevada residents who were injured, should we certify this question to the Nevada Supreme Court for its determination since this is strictly a question of state law? We're just guessing on what they would do. It's a great question. I guess the only way I would counter that, because I love the idea, but the only reason I think that you know how they would rule is in the Williams case, it says specifically scenarios similar to Williams. And, of course, in Williams we had an out-of-state California resident who actually came to Las Vegas, got in an accident here. And here we have a little bit different scenario, but that's even a worse scenario for the respondents. You've got an out-of-state who happens to fortuity of the accident in Nevada. And it says even with that situation, Nevada public policy would apply where the other state's laws would preclude all recovery. So that's kind of the primacy of the statutory minimum is what you're referring to. But if, you know, let me just say, speaking only for myself, you both make very good arguments. You've written good briefs. You're making good arguments. Reasonable people seem to be able to differ in this area. And it's not federal law we're being asked about. We're being asked about Nevada law only. And anyway, I may be the only one who I just don't know how we can possibly guess. Well, I guess if you look at the standard, is that you consider the light most favorable to the respondents in this particular situation. And the district court did rule, you know, standing in Nevada that Nevada law did apply and the Nevada law would require the 1530 coverage under the Nevada's Responsibility Act. And so if we look at whether or not a Nevada court has, in fact, ruled on this issue, sure it was federal, but at least it was in the state of Nevada, and they did consider only Nevada cases as subject to their order. So I — So you're saying even though we have de novo review, we should give a little bit of deference to the district judge who is a Nevadan and knows that law. Is that your point? Yeah. I think the deference would be to the extent of what law he specifically relied upon and whether or not that law is based upon good reason and supports his finding. Let me ask you something about the certification. Since I used to litigate this sort of thing, I sort of put myself in your shoes, both of you. I did both sides. I'm thinking, gee, 1530 case and their decision is not going to be precedential and they're making us go through a whole other round of appellate litigation. I don't know about that. Is that what this is about? Is it only a 1530 case? Sadly, it is, and unfortunately it was the appellants that chose the forum in federal court. You know, we probably would have been two years ago having a finality to this. But that's where we do stand. I think both of us look at this as a significant issue. It is only 1530, but you have to make your argument. And we're non-precedential anyway. If we make a mistake, it's no big deal, except for these parties. But it's not like we mess up the law in Nevada. You know, I guess the parties may look at it differently. It's a big deal for the parties. I mean, the kids either recover or they don't, which leads me to my next question. Sure. You want to read Williams to mean that if following the choice of law in the contract means that the parties recover nothing, then it's an invalid choice of law. I don't think Williams can mean that, because Williams says it's following Sotirakis, and in Sotirakis the parties recovered nothing. Well, it's interesting, and that's why I think we look at the last case. No, I think Williams must be focusing on that must be bolstering, and they must be focusing on where these people live. Or they're making a new rule. Well, Your Honor, I think they're simply citing the sucker. They don't say they're making a new rule. They say they're following Sotirakis. Well, I think they're following Sotirakis to the extent of determining the five factors for the substantial relationship. And here we do have the children that are actually living here in Nevada, that have treated in Nevada, have outstanding bills in Nevada. But to the point, it goes beyond Sotirakis, and it says, okay, we look at specifically, if you look at the final portion of their opinion, it cites Daniels, and it says Nevada's public policy wants to avoid someone from receiving nothing. And so it extends beyond Sotirakis. Again, I think Sotirakis was for the factor consideration. I think in Daniels the policy was delivered to a Nevadan. It was, but it also resulted in zero recovery. And so, but, again, I'm just looking at the language that they chose to use, Your Honor. Well, it's different because a Nevadan buys a policy from an insurance company. Nevada is entitled to impose its public policy on the terms of that contract. Well, it was a Nevada resident that they had specifically contracted to apply Missouri law. And so the question was, even though the intent of the parties was specific. The Missouri thing was all phony, though, as the opinion described it. Yeah, I guess, again, that's why I started off by reading that the scenario similar to Williams. The policy said we're delivering the policy in Missouri, only that wasn't true. And I apologize, Your Honor. I guess my focus on this was that the Court ends their decision in Williams by saying in cases similar to Williams that result in zero recovery, that would be against Nevada law. Now, in Williams he received $300,000 already, so they were saying that he'd already received some recovery. Now, again, in Williams we have an out-of-state resident with an out-of-state insurance policy that happens to get injured in the state of Nevada. So they specifically said in scenarios similar to Williams, we apply Nevada public policy only where states' laws would preclude all recovery. And so I do think that Williams stands for the proposition that even when there's an out-of-state resident who happens to get involved in an accident in Nevada, and even that's the limit of the context, which we exceed that substantially in this case, that even then where there's going to be zero recovery, if we apply that out-of-state laws, that will be void to the extent it violates public policy. And to be clear, you're not asking for policy limits. You're asking for the minimum statutory recovery under Nevada law. Correct. I believe that's consistent with the district court's order as well as our stipulation, Your Honor. I thought your stipulation was if you win here, you get policy limits. No. The stipulation is still that the control, the law that controls is that even when there's a valid exclusion, it's only valid to the extent that it provides for the state minimum. If I stipulated something else, I'd love it, but I believe that was it. I thought it said, well, it says in the event Nevada law applies, Christian Fahrenreich and Randy Fahrenreich are each entitled to $15,000 from Progressive. That looks like a stipulation that if you win on the choice of law issue, you get policy limits. Oh, those weren't the policy limits. I believe they were $50,000, $100,000 per person. So this is the statutory minimum requirement and has nothing to do with the policy limits, which were much, much higher. Correct, Your Honor. I see. That's why we're just focusing on any recovery. I guess pretty much that's it, Your Honor. I will say that the Nevada has consistently upheld that NRS 485-3091, the insurance and responsibility laws, do void certain insurance exclusions, but only to the extent, and this is what we've stipulated too, they limit car accident victims from any recovery. And in this particular case, it's the $15,000 per person, which would be for Randy and for Christian Fahrenreich. Thank you. Thank you. You have a little bit of rebuttal time remaining. Your Honor, thank you. Williams reaffirmed and readopted the Sotorokas case. And that's the basis upon which the Williams decision was made. There's the language in Williams, but I think it's really dicta. And if you look at the language and how it's written, it says, indeed, in scenarios similar to Williams, we applied Nevada public policy only where the other state's laws would preclude all recovery. And that's the situation here. It would preclude all recovery. Yes. I think their point with making that statement was they're trying to underscore the difference when you only have routine dissimilarity, they're going to enforce the other state laws, but it's only in a situation where it's egregious, like in the Daniels case, where they tried to terminate a policy without adequate notice. They manipulated the delivery of the location of the policy to a Nevada resident. That's not what Williams actually says, though. It's just that one sentence. So you're asking us to read a whole lot into it beyond what the words of it are. I think that statement is their attempt to underscore what you need to see in the event of policy to invalidate an otherwise valid choice of law provision. I think they look at auto policies like this with family member exclusion as routine dissimilarities. That was what they said. Thank you, counsel. The case just argued is submitted, and we appreciate very spirited and helpful arguments, and we stand adjourned for this morning's session. And just for our record on that issue, I have no problem stipulating, if the court feels it needs to certify the question for the Nevada State Court. You don't have to stipulate. We get to decide what we want to do. But I appreciate your cooperative attitude. And just a reminder for any students or others, we will come back into the courtroom after our conference to meet with students or anyone else and talk to you. Thank you.
judges: Beezer, Kleinfeld, Graber